This is an appeal by the plaintiffs, Phillip and Virginia Whitworth, from the denial of their motion for new trial. The complaint consisted of two counts. The first count charges the Utilities Board with negligence in maintaining its sewer lines. The second count against Hendrix, the builder of the plaintiffs' house, is in warranty. At the conclusion of the plaintiffs' case, the court directed verdicts for the defendants.
On November 29, 1976, the plaintiffs, Phillip and Virginia Whitworth, owned and resided in a house within the Town of Blountsville, Alabama. This house had been purchased from defendant Charles Hendrix in 1975.
While Hendrix owned this house a sewage line was installed. It was hooked onto the main sewage line which is owned and operated by defendant Utilities Board of the Town of Blountsville.
At the time this line was attached Kermit Clayburn was employed as Superintendent of water and sewage by the Utilities Board. He inspected the lines at the time of installation as it was his job to keep the Town's sewer system operating effectively. The plaintiffs paid a monthly bill to the Utilities Board of the Town of Blountsville for this sewer service.
On the morning of November 29, 1976, Virginia Whitworth heard gurgling noises in the basement of her home and found sewage backing up into the basement through the drain in her shower. She immediately called the Blountsville Town Hall and reported this to the Town Clerk, requesting assistance.
That afternoon Kermit Clayburn arrived at the Whitworths' home. Clayburn attempted to stop the backup of sewage by pouring acid into the drain of a shower stall. This attempt failed to stop the flow of sewage. Phillip Whitworth and a neighbor then dug up the sewer line and knocked a ventilator hole in it. Sewage poured out of this hole into the Whitworths' yard. The sewage flow into the basement ceased.
The following day Clayburn inserted a steel cable approximately one hundred feet long into the hole made by Phillip Whitworth. This metal snake was not long enough to reach the clog. Clayburn then inserted the snake into a manhole located fifty yards from the Whitworths' property. The clog was found and cleared. Clayburn told the plaintiffs that this clog was in the main or feeder line of the sewer and not in the line from their house.
Two days later sewage again backed up in the shower stall. However, it was confined to this area and no damage was done. Clayburn was called and he cleared the sewer line.
The plaintiffs brought suit against the Utilities Board of the Town of Blountsville and Charles Hendrix for damages resulting from this sewage backup. During the course of the trial plaintiffs requested that Kermit Clayburn be considered as an adverse witness under Rule 43 (b), ARCP, and that they also be allowed to refresh his memory from a previous deposition. The trial court refused both requests. *Page 559 
Motions for directed verdict were filed on behalf of each defendant and granted by the trial court. Plaintiffs' subsequent motion for a new trial was denied.
The plaintiffs assert that the trial court was in error in failing to grant their motion for a new trial and raise the following issues:
 (1) Did the trial court err in refusing to allow the plaintiffs to question Kermit Clayburn as an adverse witness? and
 (2) Did the trial court err in granting defendants' motion for a directed verdict?
Rule 43 (b), ARCP, sets forth the scope of examination and cross-examination. For one to be considered an adverse witness under this Rule the defendants contend that such person must be a party to the law suit "or an officer, director, or managing agent of a public or private corporation. . . ." And since Clayburn fails to fall within any of these categories he could not be an adverse witness. This is the position taken by the trial court.
In its analysis of Rule 43 (b), Wright Miller's treatise on federal practice and procedure states that:
. . . the second sentence of Rule 43 (b) creates a broader remedy. It allows a party to call to the stand an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association that is an adverse party. A witness so called may be interrogated by leading questions, he may be contradicted, and he may be impeached just as if he had been called by the adversary. This useful provision of the rule has been liberally construed by the courts. They have taken a broad view of who is a "managing agent" and they have expanded the concept of the adverse party to include anyone who could have been sued, either instead of the named defendant or as a codefendant. They have not extended the rule, however, to a mere employee of a party or others not closely enough related to a party.
9 Wright Miller, Federal Practice and Procedure § 2413, at p. 368-70 (1971). See also, Skogen v. Dow Chem. Co., 375 F.2d 692
(8th Cir. 1967).
We find Clayburn to be a managing agent within the meaning of Rule 43 (b). Clayburn's title, while employed by the Utilities Board, was that of Superintendent of Water and Sewage. His duties were to keep up the main line, the sewer, and all meters to the main sewer. As he appears to be the sole person concerned with the maintenance of the city sewers the trial court was in error in failing to permit the plaintiffs' questioning him as an adverse witness.
The plaintiffs allege that their amended complaint contains two theories of recovery, one being breach of an implied contract, and the other that of negligence. They contend that the trial court erred in directing a verdict against them on both of these theories.
However, we find that the plaintiffs' complaint as amended, contains counts sounding only in negligence and not in contract. As the contractual issue was not properly before the trial court it may not now be raised on appeal. Sherrill v.Frank Morris Pontiac-Buick-GMC, Inc., 366 So.2d 251 (Ala. 1979); Brown v. Robinson, 354 So.2d 272 (Ala. 1977).
The plaintiffs' negligence theory of recovery is based upon §11-47-190, Code 1975, which states:
 No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty, or unless the said injury or wrong was done or suffered through the neglect, carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such unreasonable length of time as to raise a presumption *Page 560 
of knowledge of such defect on the part of the council or other governing body. . . .
It is alleged that the damage to their home was proximately caused by Clayburn's failure to promptly respond to plaintiffs' requests for assistance.
In Sisco v. City of Huntsville, 220 Ala. 59, 124 So. 95
(1929), this Court found that a city could be held liable, in some instances, for the damage caused by its sewer system. The Court stated that:
 A municipality duly authorized to construct and maintain a system of municipal sewers, when undertaking so to do, owes the duty of reasonable and ordinary care to avoid injury to persons and property. While related to the government function of preserving the public health, such improvement and the maintenance thereof involves continuous management.
* * * * * *
 . . . The liability is analogous to that involved in the construction and maintenance of streets, or public utilities like water works and light plants.
220 Ala. at 60, 124 So. at 96. [Citations omitted.]
The question presented is whether the City exercised reasonable and ordinary care in dealing with the Whitworths' sewage problem as there is no absolute liability for sewer system backups. Brown v. City of Fairhope, 265 Ala. 596,93 So.2d 419 (1957).
On the day in question, Mrs. Whitworth discovered sewage backing up into her home at 10:00 o'clock that morning. She immediately called City Hall requesting assistance. Mrs. Whitworth attempted to solve the problem herself by pouring Drano into the shower drain. This attempt was unsuccessful and when she returned that afternoon, after picking up her daughter from school, she found her basement flooded with sewage. She again called City Hall asking for help. Kermit Clayburn finally arrived at 4:00 p.m., some six hours after Mrs. Whitworth's first phone call. The reason for this delay is not apparent from the record.
The Utilities Board will not be liable for mere delay by Clayburn in arriving at the Whitworth's home. It must be shown that his delay was due to negligence. However, there is no need for us to resolve this issue as this case is due to be reversed on another ground previously stated. We will not decide what the trial court might have found had the plaintiffs been allowed to cross-examine Kermit Clayburn as an adverse witness under Rule 43 (b).
The decision of the trial court directing a verdict in favor of the Utilities Board of the Town of Blountsville is due to be reversed. The trial court's decision as to defendant, Charles Hendrix, is hereby affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and FAULKNER, SHORES and EMBRY, JJ., concur.