[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 780 
On February 21, 1978, Billy Ray Buckalew (plaintiff) was injured on the premises of Stauffer Chemical Company (defendant). At the time of injury, Buckalew was employed as an electrical foreman by McIntyre Electric Company, a sub-contractor employed to do electrical work in or about Stauffer's plant. The injury occurred when a ladder upon which Buckalew was standing collapsed, causing him to fall approximately 14 feet onto a concrete floor. As a result of the fall, Buckalew sustained fractures of the left wrist and a compression fracture of the back, and he is still permanently disabled because of those injuries.
The facts indicate that the ladder in question was the property of Stauffer, and that Buckalew borrowed it to repair a broken conduit because McIntyre had no available ladder which extended high enough to perform the task. Buckalew claimed that he borrowed the ladder at the direction of Jack Barnett, the electrical supervisor for Stauffer, who acted as liaison with Stauffer's subcontractors.
Buckalew brought suit in Mobile Circuit Court, alleging negligence on Stauffer's part in providing him with a ladder which it knew, or should have known, was unsafe. His wife, Carol Buckalew, joined in the suit, asserting claims for loss of consortium.
The case was tried before a jury. At the close of their case, the Buckalews' motion for directed verdict was denied, as was Stauffer's similar motion made at the close *Page 781 
of all testimony. The jury returned verdicts in favor of Billy Ray Buckalew for $100,000 and Carol Buckalew for $25,000. Stauffer's motions for judgment notwithstanding the verdict or, alternatively, for new trial or remittitur, were denied.
Stauffer appeals here, contending that the trial court erred by: (1) not granting a directed verdict, JNOV, new trial, or remittitur in regard to the issue of Carol Buckalew's damages; (2) allowing evidence to be introduced of subsequent remedial measures taken by Stauffer, in particular, a report indicating the results of a ladder inspection conducted at Stauffer's plant seven days following the accident, which showed that a substantial number of Stauffer's ladders were defective; (3) not granting a directed verdict, JNOV, or new trial on the issue of Stauffer's liability; and, (4) allowing the Buckalews to examine Stauffer's employees and former employees as adverse witnesses. We find no prejudicial error and affirm.
The record shows that Stauffer was engaged in the production of various agricultural chemicals at its Mobile plant, that it recognized the corrosive effect of these chemicals on the metal and wooden components of the ladders in its plant, and that it was aware of Occupational Safety and Health Administration (OSHA) regulations requiring regular ladder inspections. For these reasons, Stauffer, for some time prior to Buckalew's injury, had maintained a policy of inspecting all ladders on its premises monthly, keeping reports showing the number of ladders found to be defective.
Prior to trial, Stauffer filed a motion in limine seeking to prohibit reference to the fact that ladder inspection reports were compiled after the accident and, specifically, that a number of ladders were thrown away as a result of the subsequent inspection. The trial court denied Stauffer's motion, and the Buckalews were allowed, over Stauffer's objections, to introduce the inspection report, which was made on February 28, 1978, seven days after Buckalew's injury. The Buckalews were also allowed to refer to that report both in their opening statement and during examination of witnesses.
The February 28th report showed that of 66 ladders inspected, 27 were found to be "bad" and were discarded. This evidence was especially damaging when considered in the light of the previous month's report, made on January 27, 1978, showing that of 56 ladders inspected, only one was found to be "bad." Stauffer asserts that the February 28th report, when viewed in this light, has no probative value except to show its negligence in conducting ladder inspections. We do not agree.
As Stauffer correctly contends, evidence of subsequent remedial measures is generally inadmissible to prove negligence. Standridge v. Alabama Power Co., 418 So.2d 84 (Ala. 1982). The reason for this rule is that admission of such evidence would tend to prevent even careful persons from making repairs until after trial, a result which might subject other persons to the same risk of injury. C. Gamble, McElroy'sAlabama Evidence, § 189.92 (3d ed. 1977), citing, Burnwell CoalCo. v. Setzer, 191 Ala. 398, 67 So. 604 (1914); however, there are several exceptions to the general rule, such as where evidence of subsequent remedial measures is admitted to show defendant's control over the allegedly defective premises or instrumentality, the existence of a condition at the time of the accident in question, the feasibility of the use of safeguards or precautionary measures, or to impeach a witness. Evidence of remedial measures may also be admitted where the remedial measures were taken within the res gestae of the occurrence giving rise to the cause of action. Standridge,supra.
The present evidence was not, in our view, admissible to show ownership or control, because neither ownership nor control of the ladders was in dispute, Norwood Clinic, Inc. v. Spann,240 Ala. 427, 199 So. 840 (1941), nor was it probative as to a condition existing at the time of injury, City of Montgomery v.Quinn, 246 Ala. 154, 19 So.2d 529 (1944), or as to the feasibility of safeguards, Werner v. Upjohn *Page 782 Co., 628 F.2d 848 (4th Cir. 1980), cert. denied, 449 U.S. 1080,101 S.Ct. 862, 66 L.Ed.2d 804 (1981), cited as authority inStandridge, supra. The res gestae exception, as applied inDixie Electric Co. v. Maggio, 294 Ala. 411, 318 So.2d 274
(1975), also has no application here. We do, however, hold that the subsequent inspection report was properly introduced for the purpose of impeachment.
Subsequent remedial measures have previously been recognized as admissible where offered to contradict or impeach a witness or to lessen the weight of expert testimony. Norwood Clinic,supra. While the application of this exception in Alabama has heretofore been limited to situations in which subsequent modifications of a defective instrumentality have been introduced to contradict expert testimony that such modification was impossible, Bedgood v. T.R. Miller Mill Co.,202 Ala. 299, 80 So. 364 (1918); Frierson v. Frazier, 142 Ala. 232,37 So. 825 (1904), we do not believe its use should be limited to those specific situations.
We would note that Federal Rule of Evidence 407 permits evidence of subsequent remedial measures for the purpose of impeachment, Werner, supra, and that under the federal rules, this exception has been applied quite liberally. For example, in Kenny v. Southeastern Pennsylvania Transportation Authority,581 F.2d 351 (3rd Cir. 1978), cert. denied, 439 U.S. 1073,99 S.Ct. 845, 59 L.Ed.2d 39 (1979), it was held that evidence that new fluorescent lights were installed four days after a rape was properly admitted to rebut defendant's contention that the area was adequately lighted at the time of the rape. We findKenny, supra, to be very similar to the present case, as we shall show.
The Buckalews called Robert Gardner as an adverse witness. He testified that both he and Nathanial Lucius were "safety mechanics" employed by Stauffer to conduct, among other things, monthly ladder inspections. On cross-examination, he testified concerning ladder inspections conducted prior to the date of Buckalew's injury, and stated that "some months seems like all of them [ladders] will be bad," and that on many occasions "half" of the ladders inspected were bad. In effect, his testimony was that he and Lucius had carefully conducted inspections prior to Buckalew's injury. At this point, the February 28th report was offered and introduced, along with prior inspection reports. Those reports clearly showed that at no time were all, or even half, of the ladders inspected found to be bad. The reports not only contradicted Gardner's testimony, thereby impeaching his credibility as a witness, but also impeached Stauffer's claim that its ladder inspection program, prior to Buckalew's injury, was conducted in a reasonable manner. Therefore, the report was properly admitted for these purposes. Kenny, supra; Standridge, supra.
As to Stauffer's contention that Gardner, Obie Cates, and Jack Barnett were improperly called as adverse witnesses, the evidence shows that all three were longtime Stauffer employees and that they were either responsible for safety at Stauffer's plant or were in a supervisory position on the day of Buckalew's injury. Thus, we believe that all three could have been named as defendants in the present action, and, considering our decision in Whitworth v. Utilities Board,382 So.2d 557 (Ala. 1980), we believe they were "managing agents" within the meaning of Rule 43 (b), Ala.R.Civ.P. As managing agents, all three were properly subject to being called as adverse witnesses.
We see no support for Stauffer's contention that it was entitled to a directed verdict, JNOV, or a new trial. It is a well known principle of law in this state that the standard of review for testing motions for directed verdict is identical to that for testing motions for JNOV, and that the jury must be allowed to pass on the evidence if there is any evidence, no matter how slight, to support a verdict in favor of the party against whom a directed verdict is sought. Casey v. Jones,410 So.2d 5 (Ala. 1981). Similarly, a motion for JNOV should be denied if there is any conflict in the evidence *Page 783 
for the jury to resolve, the existence of such conflict to be determined by the scintilla rule. Warren v. Ousley,440 So.2d 1034 (Ala. 1983). Both motions for directed verdict and for JNOV may be denied if there is a scintilla of evidence favorable to the non-movant. Marion v. Hall, 429 So.2d 937
(Ala. 1983).
In the case sub judice, there is evidence that Stauffer undertook to provide safety inspections, that, at least two times prior to the accident, its employees inspected the ladder on which Buckalew was injured, and that neither of these inspections showed the ladder to be "bad." Further, there was expert testimony indicating that the collapse of the ladder was caused by localized chemical activity which should have been visible during these inspections, if properly conducted.
We believe the foregoing evidence presents more than a scintilla of evidence indicating Stauffer's negligence in conducting ladder inspections. Beasley v. MacDonald EngineeringCo., 287 Ala. 189, 249 So.2d 844 (1971); therefore, we find no error in the trial court's denial of a directed verdict or JNOV on the issue of Stauffer's liability.
The same reasoning applies to Stauffer's similar motions regarding Mrs. Buckalew's damages. Although she did not appear at trial, there is evidence showing that the Buckalews are husband and wife, that immediately after her husband's accident, Carol Buckalew went to the hospital, that she observed her husband's pain and treatment, and that she visited him often during his hospital stay. The evidence also shows that Mr. Buckalew was admitted to the hospital on February 21, 1978, underwent surgery, and remained hospitalized until February 28, 1978, when he underwent a second surgical procedure. After this second procedure, he remained in the hospital, confined to bed, until March 4, 1978, at which time he was released to go home. Between his return home and the time the doctors released him to go back to work, June 2, 1978, he was unable to participate in any normal activities around his house. He also underwent a third surgical procedure for removal of a pin from his wrist. Finally, the evidence shows that, even after his return to work, his activities were limited by his injuries and that those injuries appear permanent. This evidence is sufficient to present at least a scintilla from which the jury could have inferred Carol Buckalew's loss of consortium, Marion, supra; Williams v.Alabama Neon Sign Co., 293 Ala. 454, 304 So.2d 895 (1974), and we find that Stauffer's motions for directed verdict and JNOV on these issues were properly denied.
The denial of Stauffer's motion for new trial was also proper. A strong presumption favors a jury's verdict, especially when the trial court refuses to grant a new trial.Matthews Brothers Construction Co. v. Lopez, 434 So.2d 1369
(Ala. 1983). Consequently, the granting or refusing of a motion for new trial is within the sound discretion of the trial court, whose exercise of that discretion carries with it a presumption of correctness which will not be disturbed on appeal absent abuse of some legal right disclosing plain and palpable error. Cox v. Cox, 431 So.2d 527 (Ala. 1983). A review of the record reveals no abuse of discretion nor plain and palpable error.
Stauffer was not entitled to a remittitur. The companionship and society of a husband are not articles of commerce which can be bought and sold, weighed or measured. Monetary compensation for loss of consortium is to be determined by the jury. Robbinsv. Voigt, 280 Ala. 207, 191 So.2d 212 (1966). The jury's verdict awarding such damages will not be disturbed on appeal unless so excessive or grossly inadequate as to indicate passion, prejudice, corruption, or mistake. Our authority to disturb the verdict on the grounds of excessiveness is to be exercised with great caution. This is especially true where the trial court has refused a new trial or remittitur, thereby strengthening the presumption in favor of the jury's verdict. *Page 784 Prescott v. Martin, 331 So.2d 240 (Ala. 1976).
The $25,000 verdict in favor of Carol Buckalew seems to us somewhat generous in view of the sparsity of evidence concerning the claims she made of loss of consortium; however, based upon Mr. Buckalew's continued partial disability and his apparent total disability for more than three months, we cannot say that the verdict resulted from passion, prejudice, corruption, or mistake.
Finding adequate evidence to support the jury's verdict and no errors in the admission of evidence, we affirm the judgment.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.