946 F.2d 1085
 60 USLW 2344, Prod.Liab.Rep. (CCH) P 13,005
 William Earl GLASSCOCK, Charles A. Reich, Gary N. Starkey,
Lina R. Starkey, Gus Geisler, Sr., Lena Geisler, Malvin R.
Lane, Nancy S. Lane, Carlos G. Gonzalez, Delia S. Gonzalez,
William E. Smith, Sandra Smith, James W. Phillips, Barbara
E. Phillips, Roy B. Ghent, Lois T. Ghent, Charles Marsh, and
Leeta Fay Marsh, Plaintiffs-Appellees,
v.
ARMSTRONG CORK CO., et al., Defendants,
The Celotex Corp., Defendant-Appellant.
 No. 90-4095.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 24, 1991.
Rehearing and Rehearing En Banc
Denied Dec. 2, 1991.
 
 Kevin F. Risley, Elizabeth M. Thompson, Donald Verplancken, Paul F. Simpson, Butler & Binton, Houston, Tex., for the Celotex Corp.
 Paul L. Sadler, Rex Houston, Wellborn, Houston, Adkison, Mann & Sadler, Henderson, Tex., Scott Baldwin, Scott Baldwin, Jr., Baldwin & Baldwin, Marshall, Tex., for Glasscock, et al.
 Appeals from the United States District Court for the Eastern District of Texas.
 Before CLARK, Chief Judge, WILLIAMS and DAVIS, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 The Celotex Corporation appeals a jury verdict awarding compensatory and punitive damages to eighteen plaintiffs for injuries caused by exposure to Celotex's asbestos-containing products. Celotex directs its primary challenge toward the amount of punitive damages assessed by the jury. The claim is that the damage awards are excessive and violate provisions of the United States and Texas Constitutions. Celotex also contends that the award of compensatory damages to some of the plaintiffs was in error. After a thorough evaluation of the record, we affirm the jury verdict in full.
 
 Facts
 
 2
 Celotex is a manufacturer of building products, including roofing materials, wallboard, and certain forms of insulation. Celotex entered the insulation business in 1972 by acquiring the assets of the Panacon Corporation. Panacon was the successor in interest to the Philip Carey Manufacturing Company. Some of the products manufactured by Philip Carey contained asbestos. Panacon and later Celotex continued the production and distribution of asbestos-containing products originally manufactured by Philip Carey.
 
 
 3
 Insulation installers and their spouses brought products liability actions, asserting failure to warn, in the district court. The suits were against Celotex and several other defendants. The district court consolidated these individual actions. Ten of the plaintiffs worked in the asbestos industry and claimed injuries from their exposure to defendants' products. The spouses of eight of these workers were also plaintiffs, seeking damages for loss of consortium. In addition, one of the spouses claimed injuries from exposure to asbestos fibers carried home on her husband's clothing.
 
 
 4
 Before trial, the parties allowed defendant Johns-Manville Manufacturing Company to sever its action from the primary suit. During trial, all of the remaining defendants except Celotex settled with the plaintiffs. The jury then returned a verdict finding Celotex strictly liable for the plaintiffs' injuries. The jury concluded that (1) each of the plaintiffs who had been exposed to asbestos had suffered an asbestos-related injury, (2) Celotex's products were a producing cause of the injuries, and (3) the products were defective and unreasonably dangerous because Celotex failed to warn the plaintiffs of the potential dangers of prolonged exposure to asbestos.
 
 
 5
 The district court submitted special interrogatories on damages to the jury. The interrogatories asked the jury to assess the actual damages suffered by each plaintiff, and to apportion damages among the defendants. Although only Celotex remained as a defendant at this point, all defendants except Johns-Manville were listed in the interrogatories as subject to the apportionment. Separate interrogatories asked the jury to determine whether the plaintiffs should receive punitive damages from Celotex for its contribution to the plaintiffs' injuries and, if so, the appropriate amount of punitive damages for each plaintiff.
 
 
 6
 The jury awarded a total of $2,590,000 in actual damages against all of the defendants. Celotex was found responsible for approximately $317,625 of the total damage award. The jury also awarded eleven plaintiffs a total of $6,100,000 in punitive damages against Celotex.
 
 
 7
 Celotex appeals, alleging in part that (1) there was insufficient evidence to support actual damage awards for loss of consortium and loss of past earning capacity, (2) the applicable statute of limitations barred the claims of two of the plaintiffs, (3) punitive damages should not have been awarded or, alternatively, (4) the punitive damage award was excessive and in violation of Texas law and the United States Constitution.
 
 I. Compensatory Damage Awards
 
 8
 Celotex challenges the compensatory damage awards found by the jury. Celotex argues that the evidence did not support most of the loss of consortium awards, and some of the awards for loss of earning capacity in the past. Celotex also argues that the statute of limitations barred the claims of two of the plaintiffs. After carefully reviewing the record, we uphold the compensatory damages awarded by the jury.
 
 A. Loss of Consortium
 
 9
 Nine of the plaintiffs alleged loss of consortium as a result of their spouse's exposure to asbestos.[1] The jury awarded $25,000 to each of these plaintiffs. Celotex moved for judgment notwithstanding the verdict (JNOV), claiming that the plaintiffs failed to offer any testimony to support awards for loss of consortium. The district court denied Celotex's motion.
 
 
 10
 We properly apply a highly deferential standard of review to a district court's decision denying a JNOV motion. We reverse only if a reasonable and fair-minded jury could not arrive at its verdict after considering the evidence. See Brown v. Arlen Management Corp., 663 F.2d 575, 581 (5th Cir. Dec.1981); Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969) (en banc). On appeal, Celotex challenges the loss of consortium damages awarded to eight of the nine spouses. Celotex does not contest the damages awarded to plaintiff Barbara Phillips, apparently conceding the sufficiency of the evidence to support her award for loss of consortium.
 
 
 11
 Texas first recognized an action for loss of a spouse's consortium in Whittlesey v. Miller, 572 S.W.2d 665 (Tex.1978). The Texas Supreme Court defined loss of consortium as the loss of companionship, emotional support, love, felicity, and sexual relations necessary to a successful marriage. Id. at 666. The court recognized the difficulty in translating the subjective nature of this loss into monetary terms, but it trusted the ability of the jury to calculate an appropriate award based on the evidence. P.T. & E. Co. v. Beasley, 698 S.W.2d 190, 196 (Tex.Civ.App.1985).
 
 
 12
 The problem here, according to Celotex, is that eight of the plaintiffs failed to offer any evidence which would allow the jury to find loss of consortium. But after reviewing the record, we agree with plaintiffs that the evidence supports all of the damage awards for loss of consortium.
 
 
 13
 Celotex correctly argues that there is little if any direct evidence of the effect asbestos-related injuries had on the plaintiffs' respective marriages. For the most part, plaintiffs did not provide specific examples of how their spouses' injuries translated into a loss of consortium. Appropriate evidence of loss of consortium includes proof of (1) the nature of the marital relationship prior to the spouse's injury, (2) the deterioration of the marital relationship following the injury, and (3) the extent and duration of the spouse's injuries. See, Whittlesey, 572 S.W.2d at 667; Monsanto Co. v. Johnson, 675 S.W.2d 305, 312 (Tex.Civ.App.1984).
 
 
 14
 With the exception of questions directed to plaintiffs Barbara Phillips, Leeta Marsh, and possibly Nancy Lane, counsel did not attempt to elicit this type of testimony from the loss of consortium plaintiffs. Generally, the testimony simply affirmed that spouses suffered symptoms of asbestos exposure. An excerpt from the testimony of plaintiff Linda Starkey is representative of the testimony given by most of the spouses:
 
 
 15
 Q: Mrs. Starkey, let me get right down to the business. As you look back and think about it, how did your husband's shortness of breath and the condition he's complaining about that you just heard him testify about, how did it come on him?
 
 
 16
 A: He began to have some shortness of breath and he began to tire more easily. And he's always been a very active person, not only at work, but when he got home from work. And I noticed he had started to slow down on some things that he was doing. Then we talked about it and he decided it would probably be a good idea to go see someone about it.
 
 
 17
 We do not conclude, however, that the absence of direct evidence of a detrimental impact on the marriage relationship prevents plaintiffs from recovering damages for loss of consortium.
 
 
 18
 During the course of the trial, each husband plaintiff claiming direct injuries as a result of asbestos exposure testified in varying degrees of detail about his work history and exposure to Celotex's products. These plaintiffs also testified about physical complaints and limitations on their activities allegedly resulting from their exposure to asbestos. Each of these plaintiffs indicated that he had trouble breathing and sleeping, and that shortness of breath made it difficult for him to accomplish simple tasks. Plaintiffs also offered a substantial amount of expert testimony establishing the long term effects of exposure to asbestos. This testimony indicated that each of the plaintiffs exposed to asbestos had or would contract asbestosis. Further testimony detailed the physical debilitation caused by asbestosis, and described future ailments that would result from the disease.
 
 
 19
 We conclude that the evidence in the record was sufficient to satisfy the burden of proof of a loss of consortium. Loss of consortium damages may be inferred from evidence showing the nature and extent of a spouse's injuries. See Cornelison v. Aggregate Haulers, Inc., 777 S.W.2d 542, 549 (Tex.Civ.App.1989).[2] A reasonable inference from the evidence presented in this case is that each of the plaintiffs suffered a loss of affection, solace, comfort, companionship, society, assistance, or sexual relations as a result of their spouse's exposure to Celotex's products. See P.T. & E. Co. v. Beasley, supra. The jury could conclude from the evidence that asbestos-related injuries of a spouse must have resulted or would result in a measure of loss of consortium for each of the plaintiffs. We do not disturb the loss of consortium damages awarded by the jury.
 
 B. Loss of Earning Capacity in the Past
 
 20
 The district court provided special interrogatories to aid the jury in its compensatory damage calculation for each plaintiff. These interrogatories listed the various elements of damages the jury could consider, and included loss of earning capacity as an appropriate component of the damage award. The interrogatories subdivided loss of earning capacity into two separate elements: loss of earning capacity in the past and loss of earning capacity in the future. An award for loss of earning capacity in the past would compensate plaintiffs for the actual loss of earning capacity they had already experienced as a result of their asbestos-related injuries. Loss of earning capacity in the future would compensate plaintiffs for their anticipated loss of earning capacity.
 
 
 21
 Celotex claims that the district court should not have allowed the jury to assess damages for loss of earning capacity in the past for five of the plaintiffs. Celotex argues that in this case the evidence was not sufficient to permit the jury to award damages for loss of earning capacity in the past for plaintiffs William E. Smith, Gus Geisler, Gary N. Starkey, Charles Marsh, or Carlos G. Gonzalez. Celotex does not challenge the sufficiency of the evidence to support an award for loss of earning capacity in the future. We apply the same deferential standard of review to this element of damages that we did when considering the sufficiency of evidence challenge to the loss of consortium awards.
 
 
 22
 Loss of earning capacity is an appropriate element of damages under Texas law. See, e.g., McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710, 712 (1943). Recovery of damages for loss of earning capacity compensates a plaintiff for the difference between the income he could earn before his injury and the income he could earn after the injury. Port Terminal R. Ass'n v. Sims, 671 S.W.2d 575, 578 (Tex.Civ.App.1984), cert. denied, 471 U.S. 1016, 105 S.Ct. 2021, 85 L.Ed.2d 302 (1985). The interrogatories in this case asked only for a global compensatory damage figure. Since the court did not require the jury to provide a separate figure for each element of damages, we do not know the precise amount of damages for loss of earning capacity in the past awarded to each plaintiff.
 
 
 23
 Celotex concedes that a plaintiff can prove loss of earning capacity in the past by introducing evidence of his earnings prior to injury and of the extent of his disability. Retzlaff v. Ground, 640 S.W.2d 676, 677 (Tex.Civ.App.1982); see also Exxon Corp. v. Shuttlesworth, 800 S.W.2d 902, 905-06 (Tex.Civ.App.1990). Plaintiffs offered substantial evidence of the nature and extent of their asbestos-related injuries. Celotex claims that the plaintiffs failed to offer sufficient evidence of their earnings or earning capacity to permit a jury to assess damages for loss of earning capacity in the past. In light of the evidence in the record, we conclude that Celotex's argument is frivolous.
 
 
 24
 Celotex had the employment history of each plaintiff entered into the record. These employment histories listed dates and places of employment for each of the plaintiffs, and included the wages earned in each job.[3] Without more, these work histories provided sufficient evidence of the plaintiffs' past earnings and earning capacity. Coupled with the testimony detailing the plaintiffs' injuries, we think that a jury could award damages to each plaintiff for loss of earning capacity in the past based on this evidence.
 
 
 25
 Our review of the trial transcript reveals additional information that the jury could rely upon in assessing these damages. Celotex correctly claims that plaintiffs Gonzalez, Geisler, and Smith did not offer any testimony concerning their past earnings. Celotex incorrectly makes this same claim for plaintiffs Starkey and Marsh. Plaintiff Starkey testified in part that as an insulator he "made anywhere from three dollars an hour to fifteen over the years as the wages increased," and that in his best year he made $50,000. Plaintiff Marsh testified that he made $5,000 a year doing roofing jobs using asbestos products, and that shortness of breath prevented him from continuing to do these jobs. Celotex has absolutely no basis for arguing that the evidence was insufficient to permit awards for loss of earning capacity in the past to plaintiffs Starkey and Marsh.
 
 
 26
 We also find that the jury could rely on the testimony of other plaintiffs to ascertain the loss of earning capacity in the past for plaintiffs Geisler, Gonzalez, and Smith. All of the plaintiffs involved in these consolidated cases installed asbestos insulation and other asbestos-containing building products. Their employment was substantially similar, and they suffered the same type of injuries. Plaintiffs' counsel informed the district court that he planned to elicit detailed testimony from plaintiffs Phillips and Lane about the nature of their work and patterns of advancement in the field, and that he intended to abbreviate his examination concerning these same topics with the remaining plaintiffs. Celotex did not object to this plan. These two plaintiffs offered extensive testimony concerning the nature of their employment and the customary wage rates, salary scales, and prospects of promotion. The remaining plaintiffs indicated that their employment was similar to that described by the first two plaintiffs.
 
 
 27
 We hold that the evidence presented was sufficient to allow a jury to award damages for loss of earning capacity to each of the plaintiffs. Armed with the individual work histories and the information elicited from the plaintiffs a jury could reasonably conclude that all of the plaintiffs suffered some loss of earning power due to their injuries. The district court did not err by including loss of earning capacity in the past as an appropriate element of damages for each of these plaintiffs.
 
 C. Statute of Limitations
 
 28
 Celotex contends that two of the plaintiffs, Roy Ghent and his wife Lois, failed to institute their action within the period prescribed by the applicable statute of limitations. The district court denied Celotex's motion for a directed verdict, and permitted the Ghents to pursue their claims. The court also refused to submit the question to the jury.
 
 
 29
 The Ghents filed their action in July 1987. The parties agree that in Texas a two year statute of limitations controls this products liability action. See Tex.Civ.Prac. & Rem.Code Ann. § 16.003. Texas has adopted a discovery rule for determining when a cause of action accrues for certain classes of cases. See Gaddis v. Smith, 417 S.W.2d 577 (Tex.1967); Willis v. Maverick, 760 S.W.2d 642, 644 (Tex.1988). The limitation period for a products liability action does not begin to run until a plaintiff discovers or should have discovered his injury and its cause in fact. Mann v. A.H. Robins Co., 741 F.2d 79, 81 (5th Cir.1984); see also Woodruff v. A.H. Robins Co., 742 F.2d 228, 229 (5th Cir.1984). The statute of limitations did not accrue in this case until Roy Ghent knew or should have known that his injuries resulted from exposure to asbestos.
 
 
 30
 Celotex argues that Roy Ghent knew that asbestos caused his condition as early as 1983, and that the statute of limitation began to run at that point. Ghent's medical records offered into evidence by Celotex contain a January 12, 1983 notation reading "history of asbestosis." Doctors testifying during trial indicated that the primary source of information for a medical history is the patient. Based on this evidence, Celotex asked the district court to conclude that Ghent knew he had asbestosis in 1983 because he told his doctor about the condition.
 
 
 31
 Celotex relies entirely on this one notation in Roy Ghent's file to support its argument for prescription. Celotex did not cross-examine Ghent concerning this notation, and it did not present any other testimony showing that Ghent knew he was suffering from asbestosis in 1983. Celotex did not offer evidence showing that Ghent's doctor discussed asbestosis with him in 1983 or that anyone in his doctor's office informed Ghent of the notation in his medical history. Ghent testified that he was not aware of his disease, the cause of his physical symptoms, until 1986. We agree with the district court that the minimal evidence offered by Celotex was insufficient to support a directed verdict, and was not substantial enough to warrant submission of the limitations question to the jury. See Boeing v. Shipman, 411 F.2d at 374-75.
 
 D. Johns-Manville
 
 32
 The jury found Celotex liable for $317,625 of the total compensatory damage award. Celotex claims that this figure is inflated because the court did not include one of the original defendants, Johns-Manville Sales Corporation, in the jury interrogatories. Before trial, the district court severed all claims against Johns-Manville, including Celotex's cross-claim for contribution. At trial, the district court refused to allow Celotex to introduce evidence of plaintiffs' exposure to Johns-Manville products. Celotex contends that the percentage causation attributed to its products by the jury is excessive because Johns-Manville was not included in the causation computation.
 
 
 33
 Texas law reduces a plaintiff's recovery and a defendant's liability in a strict liability action by the percentage of causation attributed to a settling tortfeasor. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 429 (Tex.1984). The trier of fact assigns a percentage of causation for each of the settling defendants. The trier of fact can assess a settling party's percentage causation even if the settlor is not joined in the action. Acord v. General Motors Corp., 669 S.W.2d 111, 117 (Tex.1984). Adhering to these Texas rules, the jury interrogatories required the jury to assess a percentage causation for all of the settling defendants. Celotex's responsibility for payment of the compensatory damage award was reduced accordingly.
 
 
 34
 The question here is whether these Texas decisions required the district court to permit evidence concerning Johns-Manville products and to have the jury assess Johns-Manville's percentage causation for the plaintiffs' injuries. Unlike the other defendants, Johns-Manville was not a settling tortfeasor. By agreement of the parties, the district court severed all claims against Johns-Manville from the primary action. A future proceeding will determine whether and to what extent Johns-Manville is responsible for the plaintiffs' injuries. If Johns-Manville is found liable, Celotex retains a right to seek contribution. By acquiescing to severance of Johns-Manville's action, Celotex agreed to await this future proceeding to recoup part of the damage award assessed by the jury. See Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129, 1140-41 (5th Cir.1985). We hold that Texas law does not require a jury to assess a percentage causation against a defendant severed from the action prior to trial. The district court committed no error.
 
 II. Punitive Damage Awards
 
 35
 The remainder of Celotex's appeal relates to the $6,100,000 punitive damage awards included in the jury's verdict. Celotex asks us to reverse the exemplary damage awards based on federal and state constitutional law, state statutory and common law, and on public policy grounds. Although the Supreme Court's recent decision in Pacific Mutual Life Ins. Co. v. Haslip, --- U.S. ----, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) breathed a measure of new life into Celotex's procedural due process argument, we find no reason to upset the jury's verdict.
 
 A. Gross Negligence and Causation
 
 36
 Celotex claims that the jury findings in this case were inadequate to support an award of punitive damages. Specifically, Celotex argues that the special interrogatories addressing exemplary damages did not require the jury to find a causal nexus between Celotex's acts and plaintiffs' injuries. Celotex asked the court to submit an issue to the jury on gross negligence and proximate cause. Celotex now claims that the court's refusal to submit this issue requires reversal of the jury's punitive damages findings.
 
 
 37
 Texas law permits the imposition of exemplary damages in strict liability actions involving failure to warn. See International Armament Corp. v. King, 674 S.W.2d 413, 416 (Tex.Civ.App.1984), aff'd, 686 S.W.2d 595 (Tex.1985); Ford Motor Co. v. Nowak, 638 S.W.2d 582, 593 (Tex.Civ.App.1982). To recover punitive damages in a products liability case in Texas, a plaintiff must prove "that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety." Burk Royalty Co. v. Walls, 616 S.W.2d 911, 922 (Tex.1981). A finding of gross negligence will justify punitive damages, as will a finding of reckless, willful, or intentional indifference to the rights of others. International Armament, supra.
 
 
 38
 The special interrogatories in this case asked the jury whether "the Celotex Corporation (Philip Carey Manufacturing Company) [acted] willfully, intentionally, or with callous or reckless and heedless disregard and indifference to the rights and welfare" of the plaintiffs. The court defined "heedless and reckless disregard" in the instruction as "an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it."
 
 
 39
 The jury found that Celotex failed to warn the plaintiffs of the dangers of asbestos, and that this failure to warn was a producing cause of the plaintiffs' injuries. The jury further found that Celotex acted with conscious indifference to the rights of plaintiffs when it failed to warn them of the dangers of asbestos. These findings are sufficient to justify imposition of punitive damages.
 
 
 40
 As part of this same argument, Celotex claims that the district court's refusal to allow evidence of the utility of its products tainted the punitive damage awards. Celotex does not attempt to argue that evidence of a product's utility can shield it from liability in a failure to warn case. See Borel v. Fibreboard Paper Prod. Corp., 493 F.2d 1076, 1088-89 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). Instead, Celotex claims that the utility of its products was relevant to the jury's punitive damages computation. Celotex contends that a jury must consider all of the circumstances, including the utility of a product, before determining whether to assess punitive damages. We disagree.
 
 
 41
 Celotex had a duty to warn plaintiffs of the dangers of its products. The utility of the products did not relieve Celotex of this duty. The conscious indifference Celotex displayed in failing to issue these warnings permitted an award of punitive damages. Evidence of the utility of the asbestos-containing products was irrelevant to this determination and properly excluded by the district court.
 
 B. Successor Corporation Liability
 
 42
 Celotex entered the insulation business by becoming the successor in interest to the Philip Carey Corporation in 1972. Plaintiffs' suit asked the district court to hold Celotex liable both for its own actions beginning in 1972, and for the actions of Philip Carey prior to the acquisition. Celotex argues that it should not be required to pay punitive damages for actions of a company over which it had no prior control. To hold Celotex liable in this situation, it urges, would not further either the deterrence or punishment policies supporting exemplary damages.
 
 
 43
 Celotex has raised the same argument in three recent cases before this Court. In Aguirre v. Armstrong World Industries, Inc., 901 F.2d 1256, 1258 (5th Cir.1990) we rejected the argument because Celotex failed to raise the issue in the district court. Since Celotex did not raise the issue below, the record did not contain sufficient evidence to decide Celotex's claim. Specifically, the record did not provide enough information to determine the sequence and types of transactions preceding Celotex's acquisition of Philip Carey's product line. Relying on Aguirre, we rejected the argument for the same reason in King v. Armstrong World Industries, Inc., 906 F.2d 1022, 1029 (5th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2236, 114 L.Ed.2d 478 (1991), and later in Edwards v. Armstrong World Industries, Inc., 911 F.2d 1151, 1153 (5th Cir.1990).
 
 
 44
 These decisions do not foreclose Celotex's argument because all three decisions relied upon the fact that Celotex failed to raise the issue in the district court and failed to develop a proper record to permit us to review the issue. In this case, Celotex raised the issue in a motion for a directed verdict and received a ruling from the district court. In addition, plaintiffs requested and received an instructed verdict finding Celotex liable as Philip Carey's successor. To support their motion, plaintiffs submitted Celotex's pleadings from another case. These pleadings included a detailed history of the Philip Carey Corporation. Celotex made no attempt to controvert this evidence. We agree with the district court that this evidence is sufficient to impose liability on Celotex for the acts of Philip Carey.
 
 
 45
 Plaintiffs' evidence allowed the district court to find that the Panacon Corporation succeeded to the interest and liabilities of the original Philip Carey Manufacturing Company. Philip Carey merged into Briggs Manufacturing Company in 1970. Briggs changed its name to Panacon Corporation on that same date. Under Texas law, the surviving corporation of a merger assumes the liabilities of each of the merging corporations. Tex.Bus.Corp.Act Ann. art. 5.06(A)(3). After the corporate name change, Panacon was the surviving corporation of the merger between Philip Carey and Briggs, and was responsible for Philip Carey's liabilities.
 
 
 46
 Celotex purchased all of the stock of Panacon in 1972. Under Texas law, a successor corporation is generally not liable for its predecessor's obligations when it acquires the predecessor by purchasing all or substantially all of the corporation's assets. Tex.Bus.Corp.Act Ann. art. 5.10(B)(2). In this case, however, Celotex expressly assumed:
 
 
 47
 All debts, liabilities and duties of Panacon to such an extent that they may be enforced against it to the same extent as if such debts, liabilities, and duties had been incurred or contracted by Celotex.
 
 
 48
 Panacon's liabilities included the liabilities of Philip Carey it inherited from the merger. Celotex in turn expressly assumed responsibility for these liabilities through its purchase of Panacon.
 
 
 49
 Panacon and later Celotex distributed the asbestos containing products which caused the plaintiffs' injuries. Philip Carey's corporate history, as established by plaintiffs' evidence, together with Celotex's express assumption of liability, support the district court's decision to hold Celotex liable for Philip Carey's acts. The district court properly permitted the jury to assess punitive damages against Celotex for the acts of Philip Carey.
 
 C. Excessiveness
 
 50
 Celotex next argues that the punitive damage awards are excessive and per se unreasonable under Texas law. The jury found Celotex liable for approximately $317,625 of the total actual damage awards. The jury then sanctioned Celotex with a total of $6,100,000 in punitive damages. The ratio of punitive damages to actual damages for Celotex is about 20:1.
 
 
 51
 Texas courts will overturn an award of damages that is so excessive as to be manifestly unjust. To prevent an excessive award of punitive damages, Texas courts require punitive damages to be reasonably proportioned to actual damages. Alamo Nat'l Bank of San Antonio v. Kraus, 616 S.W.2d 908, 910 (Tex.1981). This proportionality requirement is simply a tool to help Texas courts determine when an exemplary damage award is the product of the jury's passion rather than its reason. Wright v. Gifford-Hill & Co., 725 S.W.2d 712, 714 (Tex.1987).
 
 
 52
 Contrary to the implication in Celotex's argument, there is no set ratio between actual damages and punitive damages which will make the award reasonable. Appellate courts must conduct a case by case inquiry to decide whether a particular award satisfies the proportionality requirement. Kraus, 616 S.W.2d at 910. We must, therefore, immediately reject Celotex's claim that the punitive damage awards in this case are per se unreasonable. The Texas Supreme Court instructs us to consider the following factors to determine whether an award of exemplary damages is reasonable: "(1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which the defendant's conduct offends the public sense of justice and propriety." Id.
 
 
 53
 We consider the awards of punitive damages in this case in light of these five factors. The Texas Court of Appeals recent decision in State Farm Mut. Auto. Ins. Co. v. Zubiate, 808 S.W.2d 590 (Tex.Civ.App.1991) demonstrates the difficulty in applying this test. In Zubiate, a jury awarded the plaintiff $165,000 in compensatory damages and $15,000,000 in punitive damages. The defendant challenged the award of punitive damages as excessive. The appeals court agreed, and ordered a remittitur of $14,340,000 of the punitive damages. The court explained its decision as follows:
 
 
 54
 State Farm would have this Court apply a reasonable proportion rule at this stage of the proceedings. The Courts today are faced with a real dilemma: Is the evidence factually sufficient to support the trial court's judgment upholding the jury award of $15 million in punitive damages against Appellant? Our answer is no, but why? Because it just is.
 
 
 55
 Id. at 605 (emphasis in original). A concurrence in that same opinion is even more direct. The concurring judge argues that "[u]ntil we are able to devise an objective standard by which the jury is to award exemplary damages, we must recognize that the jury's answer will always be arbitrary. If the original award is arbitrary, is it really bad to have an arbitrary review." Id. at 607 (Osborn, Chief Judge, concurring).
 
 
 56
 Recognizing the inherent problems with the purely subjective Texas rule, we must still review the award of punitive damages in this case by subjecting it to the five Kraus factors.[4] We hold that the punitive damages award to the plaintiffs is not excessive, and is reasonably proportioned to the actual damages. The evidence in the case amply demonstrated that plaintiffs' injuries resulted from exposure to Celotex's asbestos products. A rational jury could have found that the nature of the wrong, Celotex's culpability, and the public's sense of justice required Celotex to pay substantial punitive damages.
 
 
 57
 Although the size of the punitive damage awards makes us pause, we cannot say that the punitive damage awards in this case violated the Texas rule of proportionality. Celotex has not shown us that the total of the punitive damage awards was the result of passion rather than reason. Recognizing the subjective nature of this determination, we affirm the jury's verdict.
 
 D. Repeated Punitive Damages Awards
 
 58
 Celotex provides us with several policy reasons for not permitting exemplary damages in this case. Celotex also challenges the punitive damage awards under the United States and Texas Constitutions. We have heard Celotex's arguments before, and can dispose of them on the basis of Circuit precedent.
 
 
 59
 Celotex asks us to focus not only on the punitive damage awards in this case, but also on the punitive damage awards levied against it in previous asbestos cases, and on its exposure in future cases. Celotex argues that repeated punitive damage awards in asbestos litigation defeat the purpose of punitive damages and threaten the ability of future claimants to receive damages for their actual injuries. Celotex reminds us of the number of companies already forced into bankruptcy by asbestos litigation. It claims that the twin goals of punitive damages, punishment and deterrence, are not furthered by repeated punitive damage awards. Repeated punitive damage awards allegedly threaten rather than engender the public good.
 
 
 60
 Expanding on this public policy theme, Celotex develops the first of three due process arguments. Celotex contends that the asbestos suits against it all rely on the same culpable conduct. Each time a jury assesses punitive damages against it in these suits, Celotex claims that it is being punished for this same wrongdoing. Celotex concludes that fundamental fairness limits the number of times a corporation must pay punitive damages for a single culpable act. For this reason, multiple punitive damage awards allegedly violate the substantive due process guarantee of the Fourteenth Amendment to the United States Constitution[5], and the corresponding provision of the Texas Constitution.[6]
 
 
 61
 Celotex's arguments state a proper cause for concern, but they are not new. A panel of this court has recently rejected these same claims. King, 906 F.2d at 1031-33; see also McCleary v. Armstrong World Industries, Inc., 913 F.2d 257, 260-61 (5th Cir.1990); Edwards, 911 F.2d at 1154-55. We again reject these claims. In doing so, we point out that each plaintiff injured by Celotex's asbestos-containing products has a cause of action against the company. Each of these plaintiffs also has a right to seek punitive damages for Celotex's willful and intentional failure to warn about the dangers of asbestos. There is no principle in law limiting recovery of punitive damages to the first claimant.
 
 
 62
 The same fate befalls Celotex's argument that repeated punitive damage awards violate the excessive fines provision of the Texas Constitution.[7] Recent panel decisions found no violation of the excessive fines clause resulting from multiple punitive damage awards in asbestos cases. See McCleary, 913 F.2d at 260; Edwards, 911 F.2d at 1154; King, 906 F.2d at 1029-31. Celotex has not convinced us that the facts of this case allow us to conclude otherwise. If there is to be further control of repeated punitive damage awards, the solution must be found through legislation.
 
 E. Procedural Due Process
 
 63
 During the pendency of this appeal, the Supreme Court decided Pacific Mutual Life Ins. Co. v. Haslip, --- U.S. ----, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). In Haslip, the Supreme Court rejected a due process challenge to a punitive damage award of $840,000 in an Alabama insurance fraud case. This award was more than four times the $200,000 in compensatory damages awarded to the plaintiff, but over 200 times the plaintiff's out-of-pocket expenses. The Supreme Court did, however, indicate that punitive damage awards were not immune from due process constraints.
 
 
 64
 We requested supplemental briefing from both parties on the constitutionality of Texas procedures after Haslip. We conclude that Texas procedures for assessing and reviewing punitive damage awards satisfy the requirements of due process.
 
 
 65
 The Haslip Court declined to draw a bright line between impermissible and permissible procedures for assessing exemplary damages. Id. at ----, 111 S.Ct. at 1043. Instead, the Court reviewed the specific procedures employed in Alabama to determine their constitutionality as satisfying due process requirements. The Court focused on two features of the Alabama system: the discretion accorded the jury in assessing punitive damages and the review conducted by the trial and appellate courts of punitive damage awards. We evaluate Celotex's due process challenge by comparing Texas procedures with the Alabama procedures sanctioned by the Supreme Court.
 
 
 66
 The Court intimated that unlimited jury discretion in fixing the amount of punitive damages would violate due process. Id. To avoid due process problems, the state must place some limitations on the jury's discretion. Review of the jury instructions in the Haslip case indicated that the Alabama court had satisfied this requirement. The court instructed the jury that the purpose of punitive damages was to punish the defendant and to deter future similar conduct, rather than to compensate the plaintiff. The court also told the jury that the amount of punitive damages depended upon the character and degree of the wrong and the necessity of preventing similar conduct. Finally, the court emphasized that the jury did not have to award punitive damages.
 
 
 67
 In this case, the court instructed the jury that if Celotex had acted willfully, maliciously, intentionally or with heedless and reckless disregard for the plaintiffs' rights, "the law would allow you in your discretion to assess punitive damages against the Defendant as punishment and as deterrent to others." The court further instructed the jury that "[i]n making your determination as to punitive damages you will consider the totality of the circumstances, and you may consider the financial resources of the Defendant in fixing the amount of damages."
 
 
 68
 Contrary to Celotex's argument, we are unable to detect any significant difference between the instruction given here and the one approved of by the Supreme Court in Haslip. As in Haslip, the district court imposed limitations on the exercise of the jury's discretion to award punitive damages. The court instructed the jury that the purpose of punitive damages was to punish the defendant and to deter others from similar conduct. The court also said that the jury "may" impose punitive damages. The word "may" cannot be taken as "has to." It was clear from this instruction that the jury could refuse to award punitive damages. If the jury decided to award punitive damages, the court told them to consider the totality of the circumstances in determining the amount of the award.
 
 
 69
 The Haslip Court next considered the post-trial procedures for review of punitive damage awards in Alabama. The Alabama Supreme Court requires trial courts to reflect in the record their reasons for either interfering with an award of punitive damages or for refusing to do so. Hammond v. City of Gadsden, 493 So.2d 1374, 1379 (Ala.1986). Factors for the trial court to consider include the culpability of the defendant's conduct, the need to discourage similar conduct, the impact upon the parties, and the impact on innocent third persons.
 
 
 70
 The Alabama Supreme Court then conducts an additional review of the punitive damages award. The court first undertakes a comparative analysis of the award. After the comparative analysis, the court evaluates the award to determine whether it is excessive or inadequate. The court's review relies on the following substantive standards: (1) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct, (2) the degree of reprehensibility of the defendant's conduct, (3) the profitability to the defendant of the wrongful conduct, (4) the financial position of the defendant, (5) the costs of the litigation, (6) the imposition of criminal sanctions on the defendant for the conduct, and (7) the existence of other similar awards against the defendant for the same conduct. See Central Alabama Elec. Co-op v. Tapley, 546 So.2d 371, 377 (Ala.1989); Green Oil Co. v. Hornsby, 539 So.2d 218, 223-24 (Ala.1989).
 
 
 71
 The review of punitive damages awards conducted by Texas courts contains several of the same features as the Alabama system. In Texas, both the trial and appellate courts review punitive damage awards to determine if they are reasonably proportioned to actual damages. Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910. As in Alabama, the Texas Supreme Court has provided factors for the courts to use when conducting this evaluation. These factors include the nature of the wrong, the character of the conduct involved, the degree of culpability, and the extent to which the conduct offends the public's sense of propriety and justice. Id.
 
 
 72
 The Texas scheme differs in at least two respects from the Alabama procedure. Texas trial courts are not required to justify their review of punitive damage awards in the record. The comparative analysis conducted in Alabama also has no place in Texas courts. The amount of punitive damages awarded in similar cases against the defendant is not an appropriate factor for a Texas court to consider in its review process. Although Texas requires punitive damages to be reasonably proportioned to compensatory damages, no particular ratio between punitive and actual damages is mandated. Id.
 
 
 73
 Celotex directs our attention to footnote 10 in the Haslip opinion. In that footnote, the Court apparently disapproves of states that review punitive damage awards only to determine whether they resulted from passion rather than reason. Haslip, 111 S.Ct. at 1045 n. 10. Celotex claims that since the standards enunciated by the Texas Supreme Court are meant to help lower courts determine whether a punitive damage award is the result of "passion, prejudice, or corruption," Wright v. Gifford-Hill & Co., 725 S.W.2d 712, 714, the Texas review procedures do not satisfy due process. We first reject Celotex's implication that a "passion and prejudice" standard of review can never withstand constitutional scrutiny after Haslip. See Eichenseer v. Reserve Life Ins. Co., 934 F.2d 1377 (5th Cir.1991). We also note that the factors set out by the Texas Supreme Court for review of punitive damages clearly distinguishes the Texas systems from the simplistic "passion and prejudice" analysis referred to in Haslip.
 
 
 74
 Our inquiry is whether, under the circumstance of this case, the procedures for assessing and reviewing punitive damages satisfy due process. We agree with Celotex that review of punitive damages awards in Texas is not as extensive as that required in Alabama. We cannot conclude, however, that the difference results in a due process violation. In this case, the court's instructions placed meaningful limitations on the jury's discretion to award punitive damages. Review of the jury's decision by the trial court and appellate court using the Kraus standards assures that the award is reasonable and not the result of impermissible factors. We get no indication from Haslip that the Court will scrutinize each state's procedure with Alabama as the precise model. The Court laid down the general requirements: limits on jury discretion and adequacy of post-trial review. Texas meets those requirements. Due process does not require us to upset the jury verdict in this case.[8]
 
 F. Standard of Proof
 
 75
 Celotex argues that the district court employed the wrong standard of proof for exemplary damages. Relying on Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), Celotex claims that federal due process requires a plaintiff to establish a right to punitive damages by clear and convincing evidence. Addington involved the standard of proof required for involuntary commitment in a mental institution. That decision has no relevance to the standard of proof for punitive damages.
 
 
 76
 The Supreme Court addressed the standard of proof issue in a footnote in Haslip. Although the Court indicated a preference for a higher standard of proof than preponderance of the evidence, it did not hold that due process requires a clear and convincing standard to sustain an award of punitive damages. Haslip, 111 S.Ct. at 1046 n. 11. Texas law authorizes recovery of punitive damages upon proof that a preponderance of the evidence justifies the award. Ford Motor Co. v. Nowak, 638 S.W.2d at 593. Celotex cannot establish that constitutional due process requires a higher standard of proof based only upon a policy preference expressed by the United States Supreme Court.
 
 Conclusion
 
 77
 There is sufficient evidence in this case to justify all of the compensatory damage awards by the jury. Celotex's attempts to avoid liability for some of the loss of consortium and loss of past earnings capacity claims fail. In addition, the court properly excluded Johns-Manville from the jury interrogatories. This decision did not improperly inflate the jury's apportionment of damages to Celotex.
 
 
 78
 Celotex also failed to show that the jury's award of exemplary damages cannot stand. This Court has considered most of Celotex's arguments before. Although the Supreme Court's decision in Haslip indicated that giving the jury unfettered discretion to award punitive damages might violate due process, the established Texas procedures, employed in this case, do not leave the jury without meaningful restraints. The punitive damages awarded here are high, but we cannot say the award violated established law under the finding of the jury as to the willfulness or recklessness of Celotex in this critically serious matter. The recent ruling of the Judicial Panel on Multidistrict Litigation consolidating 26,000 asbestos cases from around the country in one court provides a more reasonable approach for awarding exemplary damages in these cases, but this far-reaching new procedure does not thwart the rights of the seriously injured plaintiffs in this case each to pursue and achieve his or her own personal right to recovery under established principles of law.
 
 
 79
 AFFIRMED.
 
 
 
 [1]
 Seven of these plaintiffs were spouses of insulators and sought damages only for loss of consortium. Plaintiff Lois Ghent sought damages for exposure to asbestos fibers carried into her home by her husband, and for loss of her husband's consortium. Her husband, Roy Ghent, asked for loss of consortium damages due to his wife's exposure to asbestos
 
 
 [2]
 Although we do not find a Texas case directly considering this proposition, the established rule does permit loss of consortium damages upon proof of the severity of a spouse's injuries. E.g., Williams v. Ryder Truck Lines, Inc., 489 F.Supp. 430, 432 (E.D.Tenn.1979) (applying Tennessee law); Stauffer Chemical Co. v. Buckalew, 456 So.2d 778, 783 (Ala.1984). See also Annotation, Excessiveness or Adequacy of Damages Awarded for Noneconomic Loss Caused by Personal Injury or Death of Spouse, 61 A.L.R.4th 309, 318-19 (1988)
 
 
 [3]
 The information provided by appellant Charles Marsh is substantially less complete than the work histories provided by the remaining plaintiffs
 
 
 [4]
 The jury awarded ten of the plaintiffs $600,000 each in punitive damages, and $100,000 in punitive damages to another plaintiff. The amount of actual damages Celotex had to pay each of these plaintiffs varied from $3000 to $84,000
 
 
 [5]
 The Fourteenth Amendment provides in pertinent part: "nor shall any state deprive any person of life, liberty, or property, without due process of the law."
 
 
 [6]
 Tex.Const. art. 1, § 19 provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of law."
 
 
 [7]
 Tex.Const. art. 1, § 13 provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. The Texas Supreme Court has interpreted "fines" as used in this provision to include civil penalties. Pennington v. Singleton, 606 S.W.2d 682, 690 (Tex.1980)
 
 
 [8]
 Three recent Texas Court of Appeals decisions have rejected challenges under Haslip to Texas procedures for assessing and reviewing punitive damage awards. See Fibreboard v. Pool, 813 S.W.2d 658 (Tex.Civ.App.1991); K-Mart v. Pearson, 818 S.W.2d 410 (Tex.Civ.App.1991); State Farm Mut. Auto. Ins. Co. v. Zubiate, 808 S.W.2d 590, 603 (Tex.Civ.App.1991). The Fibreboard and K-Mart decisions have not yet been released for publication