913 F.2d 257
 Prod.Liab.Rep.(CCH)P 12,608
Billy McCLEARY and Nancy McCleary, Plaintiffs-Appellees,
v.
ARMSTRONG WORLD INDUSTRIES, INC. (Successor to Armstrong
Cork Co.), et al., Defendants,
Celotex Corporation, Defendant-Appellant.
 No. 89-5594.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 4, 1990.
Rehearing Denied Sept. 3, 1991.
 
 Julie L. Rhoades, Elizabeth M. Thompson, Donald J. Verplancken, Butler & Binion, Houston, Tex., for Celotex Corp.
 Brent M. Rosenthal, Russell Wills Budd, Baron & Budd, Dallas, Tex., for Billy and Nancy McCleary.
 Appeal from the United States District Court for the Western District of Texas.
 Before REAVLEY, DUHE and WIENER, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 The Celotex Corporation ("Celotex") suffered an adverse jury verdict and judgment in this products (asbestos) liability action decided under Texas law. Celotex contends that the damages award should be reduced by the percentage of responsibility for plaintiff McCleary's injuries that the jury assigned to three companies that McCleary previously had dismissed from the suit. Celotex also contends that it could not be liable for punitive damages under the circumstances of this case. Finally, Celotex contends that the trial judge erred in refusing to admit into evidence certain medical evidence. We affirm.
 
 I.
 
 2
 Billy and Nancy McCleary brought suit against Celotex and fifteen other defendants asserting a right to recover under negligence, strict liability, and breach of warranty theories. The McClearys alleged that each defendant either was engaged in or was the successor to a company that had engaged in the mining, processing and/or manufacturing, sale, and distribution of asbestos and insulation products containing asbestos. They further alleged that Billy McCleary had been exposed to asbestos dust from the defendants' products and had developed pleural fibrosis, resulting in a marked limitation of his ability to engage in physical activity.
 
 
 3
 The actions against three of the defendants were severed following bankruptcy declarations by those companies. The McClearys entered into settlement agreements with nine of the remaining defendants, and the actions against those companies were dismissed. The McClearys subsequently determined that they would be unable to establish the liability of three other defendants--John Crane-Houdaille, Inc., The Flintkote Co., and Garlock, Inc.--and they obtained a voluntary dismissal of their actions against these companies as well. Thus, the case proceeded to trial with Celotex as the lone defendant.
 
 
 4
 The jury returned a verdict for the McClearys and determined that they were entitled to recover $487,080 in compensatory damages. In response to special interrogatories, the jury determined that Celotex, the nine settling defendants, and the three defendants that the McClearys voluntarily dismissed had each sold defectively designed asbestos products that were producing causes of Billy McCleary's injuries.[1] The jury also determined that each of these companies had acted negligently in marketing their asbestos products and that this negligence was a proximate cause of Billy McCleary's injuries. The jury then found that one company, Armstrong World Industries, Inc., had caused 7.6924% of the injuries and that the other twelve companies had each caused 7.6923% of the injuries. Finally, the jury determined that in marketing its asbestos-containing products, Celotex had acted with "malice, willfulness, or callous and reckless indifference to the rights of Billy McCleary" and, therefore, should be liable for $200,000 in punitive damages.
 
 
 5
 The trial judge decided in response to post-judgment motions that the jury should not have been permitted to determine the liability of John Crane-Houdaille, Flintkote, and Garlock and that the jury findings with regard to these companies should be stricken from the verdict. The judge then concluded that the compensatory damages award should be reduced by 69.2308%, the percentage of causation assigned to the nine settling defendants, and that Celotex was liable for the balance. A judgment against Celotex was for $149,870.62 in compensatory damages and $200,000 in punitive damages.
 
 II.
 A.
 
 6
 Prior to trial, the McClearys sought and obtained a voluntary dismissal of John Crane-Houdaille, Flintkote, and Garlock, stating that they would be unable to establish that these companies' products contributed to Billy McCleary's injuries. Celotex argues that as a result of the dismissal those three companies are properly characterized as settling defendants within the meaning of Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 429 (Tex.1984), and that the trial judge erred in refusing to reduce the compensatory damages award by the percentage of causation that the jury assigned to them.
 
 
 7
 Texas courts have defined a settlement as "the conclusion of a disputed or unliquidated claim, and attendant differences between the parties, through a contract in which they agree to mutual concessions in order to avoid resolving their controversy through a course of litigation." Priem v. Shires, 697 S.W.2d 860, 863 n. 3 (Tex.App.--Austin 1985, no writ); see Alexander v. Handley, 123 S.W.2d 379, 381 (Tex.Civ.App.--Dallas 1938) (indicating that a "compromise agreement" involves the settlement of differences through mutual concessions or the yielding of opposing claims in order to avoid a lawsuit), aff'd, 136 Tex. 110, 146 S.W.2d 740 (1941). In this case, there is no evidence that the McClearys entered into settlement agreements with John Crane-Houdaille, Flintkote, or Garlock. Moreover, there is no evidence that the McClearys received a payment or anything else of value in exchange for the dismissal. Without any evidence of agreement between them to settle, plaintiff's mere dismissal of a defendant from the lawsuit cannot be characterized as a settlement.
 
 
 8
 Celotex disagrees with our conclusion and in support of its argument, Celotex relies on the Texas appellate court's decision in Southwestern Bell Telephone Co. v. McKinney, 699 S.W.2d 629 (Tex.App.--San Antonio 1985, writ ref'd n.r.e.). The plaintiff in that case nonsuited one of the defendants prior to trial. The trial judge interpreted the nonsuit as a settlement and reduced the plaintiff's recovery by the percentage of causation for the plaintiff's injuries that the jury assigned to the nonsuited defendant. The appellate court sustained this ruling, holding that "the trial court had enough evidence on which to construe McKinney's nonsuit as a settlement." Id. at 636.
 
 
 9
 Celotex's reliance on Southwestern Bell is unpersuasive for at least two reasons. First, if the trial court had no other evidence of settlement except the nonsuit, it would be inconsistent with the precedents discussed above that appear to require mutual concessions for there to be a settlement. Second, the Southwestern Bell court did not hold that a nonsuit is always a settlement but instead simply upheld the district court's finding. We read the decision to stand for the proposition that whether a nonsuit or dismissal constitutes a settlement turns on other facts of the case. Cf. Firestone Tire & Rubber Co. v. Battle, 745 S.W.2d 909, 913 (Tex.App.--Houston [1st Dist.] 1988, writ denied) (holding that there was no evidence that the plaintiff's decision to nonsuit a defendant was based on a settlement). In this case, there was no evidence of agreement between McCleary and the dismissed parties and the trial judge determined that there was no settlement between them. The judge properly refused to reduce the McClearys' compensatory damages award by the percentage of causation that the jury assigned to these three companies.[2]
 
 B.
 1.
 
 10
 Celotex contends that the trial judge's decision to permit the jury to award punitive damages violated the company's due process rights because the charge provided the jury with insufficient guidance as to the amount that should be awarded. The instruction to the jury only required them to find "malice, willfulness, or callous and reckless indifference to the rights of the plaintiff" in order to award punitive damages. Celotex would have probably received further instructions to guide the jury if they had been requested. See Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex.1981). Celotex waived the right to complain on due process grounds or otherwise that the jury was provided insufficient guidance.
 
 2.
 
 11
 Celotex contends that the award of punitive damages in this case, when considered in conjunction with punitive damages awards against the company in previous asbestos cases, violates the excessive fines clause of the Texas Constitution.[3] This court recently considered and rejected the same argument, explaining as follows:
 
 
 12
 Texas law provides that "[e]xemplary damages must be reasonably proportioned to actual damages." Juries calculate compensatory damages case by case. Thus, even though Celotex has paid punitive damages to other plaintiffs in other cases, the punitive damages awarded in those cases have reflected the harm inflicted upon only the plaintiffs in those suits.... The jury here has not attempted to impose punitive damages that disproportionately reflected the harm Celotex has inflicted on the plaintiffs in this case. On this record this Court cannot hold that Celotex has been punished repetitively and so excessively "as to shock the sense of mankind" in violation of the Texas Constitution.
 
 
 13
 King v. Armstrong World Indus., Inc., 906 F.2d 1022, 1030 (5th Cir.1990) (footnotes omitted).
 
 
 14
 Celotex does not contend that the $200,000 punitive damages award in this case was in itself excessive. Moreover, as was true in King, the jury's punitive damages award was intended as a punishment for Celotex's behavior as it affected the particular plaintiff in issue. We are bound by the reasoning of the King decision and thus hold that Celotex has failed to demonstrate that the punitive damages award violated the Texas excessive fines clause.
 
 3.
 
 15
 Celotex next raises what it characterizes as a substantive due process claim. It argues that multiple punitive damages awards threaten the ability of future claimants to recover compensatory damages for their asbestos-related injuries and that repeated punitive damages awards for the same course of conduct violates its right to due process. A panel of this court has recently rejected similar contentions on the basis of circuit precedent. See King, 906 F.2d at 1029-33. Celotex has presented no evidence and developed no argument to justify further response by this panel.[4]
 
 C.
 
 16
 Celotex contends that the trial judge erred in refusing to permit the jury to examine several documents relating to Billy McCleary's medical condition. "On appellate review, we will reverse the district court for an error in an evidentiary ruling only if a substantial right of a party is affected." Muzyka v. Remington Arms Co., 774 F.2d 1309, 1313 (5th Cir.1985); see King v. Gulf Oil Co., 581 F.2d 1184, 1186 (5th Cir.1978). The trial judge permitted one of Celotex's expert witnesses, Dr. Stevens, to testify to everything contained in the documents, and the evidence was fully developed before the jury. The judge's decision to preclude the jury from reviewing the documents did not prejudice Celotex.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 The jury was asked to determine the liability of the other twelve companies, in addition to that of Celotex, because Celotex had filed a cross-action against each of the original defendants in the case. This appeal is concerned only with Celotex's liability to McCleary
 
 
 [2]
 Because it would have no effect on Celotex's liability to the McClearys, it is immaterial for our purposes whether the jury determined the percentage of causation attributed to the three dismissed companies. Celotex is jointly and severally liable for the damages caused by their actions, and Celotex's rights with regard to those companies is governed by contribution principles. See Duncan, 665 S.W.2d at 429; Whatley v. Armstrong World Indus., Inc., 861 F.2d 837, 842-43 (5th Cir.1988)
 
 
 [3]
 Article I, section 13 of the Texas Constitution prohibits the imposition of "excessive fines." The Texas Supreme Court has interpreted "fines" as used in this provision to include civil penalties. See Pennington v. Singleton, 606 S.W.2d 682, 690 (Tex.1980)
 
 
 [4]
 In the district court and in its briefs on this appeal, Celotex also argued that it should not be liable for punitive damages based on the acts of Philip Carey Corporation. During oral argument, however, Celotex conceded that it failed to establish the evidentiary record in support of its argument required by our recent decision in Aguirre v. Armstrong World Indus., Inc., 901 F.2d 1256 (5th Cir.1990). We agree that Celotex's challenge is foreclosed by our reasoning in Aguirre. See also King, 906 F.2d at 1028-29