

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

JOHN CORNYN

May 22, 2000

Mr. Jim Nelson
Commissioner of Education
Texas Education Agency
1701 North Congress
Austin, Texas 78701

Opinion No. JC-0221

Re: Whether payments made to a departing superintendent described as settlement of actual or contemplated litigation are "severance payments" under section 11.201(c) of the Education Code, and related questions (RQ-0142-JC)

Dear Mr. Nelson:

You ask whether various amounts paid to a departing superintendent are "severance payments" under section 11.201(c) of the Education Code that must be reported to the Commissioner of Education and that are used to proportionately reduce a school district's state funding. We conclude that a section 11.201(c) "severance payment" is compensation paid to a superintendent beyond his or her wages upon early termination of the employment relationship by a school district. A payment, however, in settlement of actual or threatened litigation is not a section 11.201(c) severance payment. A payment to a terminated superintendent described as a settlement of actual or threatened litigation is a section 11.201(c) severance payment if there is no actual or bona fide claim. Section 11.201(c) severance payments are not limited to amounts due under the terminated employment contract and do not exclude, as a matter of law, insurance premiums or benefit payments made after the termination. Payments for contrived consulting services are section 11.201(c) severance payments. Whether amounts paid in any particular case are severance payments will depend on the termination agreement and the surrounding factual circumstances.

You explain the circumstances prompting your request as follows:

> Payments to departing superintendents often involve threatened or actual litigation between the superintendent and the district and are thus often couched as settlements of numerous potential or asserted causes of action by both parties. The [Texas Education Agency] has understood the term "severance payment" to include all payments made to a departing superintendent, at least up to the amount remaining due to the superintendent under the contract. Several districts have taken exception to this position, contending that payments in settlement of actual or contemplated litigation are not within the definition of "severance payment."

. . . .

> In addition to payments made to superintendents who will no longer be employed by the district, some districts have entered into "consulting agreements" with former superintendents, often paying them amounts very similar to the remaining payments under the employment contract.

Letter from Jim Nelson, Commissioner of Education, Texas Education Agency, to Honorable John Cornyn, Texas Attorney General (Nov. 1, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. You first ask: "Are payments made to a departing superintendent that are *couched* as settlement of actual or contemplated litigation with the district 'severance payments' as contemplated by Section 11.201?" *Id.* (emphasis added). We conclude that they may be section 11.201(c) severance payments.

Section 11.201(a) of the Education Code provides that a school district superintendent is the educational leader and chief executive officer of the school district. TEX. EDUC. CODE ANN. § 11.201(a) (Vernon 1996). Subsection (b) of section 11.201 authorizes a school board of trustees to employ by contract a superintendent for a term not to exceed five years. *Id.* § 11.201(b). Section 11.201(c) of the Education Code, about which you ask, provides as follows:

> A board of trustees of an independent school district that makes a severance payment to a superintendent shall report the terms of the severance payment to the commissioner. The commissioner shall reduce the district's Foundation School Program funds for the school year following the school year in which the first payment is made by an amount equal to the severance payment made by the board of trustees to the superintendent.

*Id.* § 11.201(c). By its terms, this section expressly requires an independent school district to report a "severance payment" made to its superintendent and the Commissioner of Education to reduce the district's Foundation School Program funds for the following school year by the amount of the "severance payment."[1]

Neither section 11.201 nor any other provision in the Education Code defines "severance payment" or prescribes its parameters. When the legislature fails to define a word or term, we must ascribe to the word or term its ordinary meaning. *Monsanto Co. v. Cornerstones Mun. Util. Dist.,*

---

[1] While section 11.201(c) does not further prescribe the duties of the Commissioner of Education, section 7.055(b) of the Education Code generally directs the commissioner to "prescribe a uniform system of forms, reports, and records necessary to fulfill the reporting and recordkeeping requirements of this title." TEX. EDUC. CODE ANN. § 7.055(b)(4) (Vernon Supp. 2000). Both sections 7.055(b) and 11.201 of the Education Code are in title 2 of the Education Code.

865 S.W.2d 937, 939 (Tex. 1993); *see also* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998) (statutory words and phrases are to be read in context and construed according to common usage unless they have acquired technical or particular meaning).

The ordinary meaning of "severance payment" is broad. The Oxford English Dictionary defines "severance payment" as "money paid in compensation to one whose contractual employment is terminated." XV OXFORD ENGLISH DICTIONARY 100 (2d ed. 1989). Similarly, Black's Law Dictionary defines "severance pay" as "[m]oney (apart from back wages or salary) paid by an employer to a dismissed employee." BLACK'S LAW DICTIONARY 1379 (7th ed. 1999); *accord Lubart v. Commissioner*, 154 F.3d 539, 541 (5th Cir. 1998) (concluding that lump sum payment intended to compensate for lost wages upon early retirement rather than to settle personal injury claims was severance payment); *Gajda v. Commissioner*, 158 F.3d 802, 805 (5th Cir. 1998) (same); *Ball v. Commissioner*, 163 F.3d 308, 309 (5th Cir. 1998) (same); *Martin v. Mann Merchandising, Inc.*, 570 S.W.2d 208, 209 (Tex. Civ. App.–Eastland 1978) (severance payment usually associated with termination of employment relationship for reasons generally beyond employee's control), *writ ref'd n.r.e.*, 576 S.W.2d 781 (Tex. 1978). While not strictly part of the definition, Black's Law Dictionary additionally notes that: "Such a payment is often made in exchange for a release of any claims that the employee might have against the employer." BLACK'S LAW DICTIONARY 1379 (7th ed. 1999); *id.* at xviii ("Bullets" used to separate definitional information (before bullet) from information not purely definitional (after bullet), such as encyclopedic information or usage notes); *see also Ball*, 163 F.3d at 309 (laundry list of claims released by employee did not change severance into settlement payment); *Lubart*, 154 F.3d at 542 (termination payment expressly conditioned on release of claims remained severance payment). Thus, the ordinary meaning of "severance payment" is compensation paid by an employer to an employee beyond his or her wages upon an early termination of the employment relationship by the employer. And that is the meaning we ascribe to the phrase as used in section 11.201(c) of the Education Code. We note that severance payments are often made in exchange for release of any claims that the employee might have against the employer.

The broad meaning ordinarily given to "severance payment" comports with the legislative purpose of section 11.201(c). *See Trimmier v. Carlton*, 296 S.W. 1070, 1074 (Tex. 1927) (ordinary meaning to be given unless to do so would lead to absurdity or thwart legislative purpose). In construing a statute, our primary objective is to give effect to the legislature's intent. *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997). To do that, we consider the statutory language, the object to be obtained, the circumstances under which the statute was enacted, and its legislative history among other things. *Id.*; TEX. GOV'T CODE ANN. § 311.023(1)- (3), (5) (Vernon 1998).

By its terms, section 11.201(c) manifests a legislative policy against expenditure of school district funds for "severance payments": it does not prohibit severance payments (school districts retain the discretion to make "severance payments"), but imposes a significant financial penalty for making such payments. *See* TEX. EDUC. CODE ANN. § 11.201(c) (Vernon 1996). This subsection was enacted by the Seventy-fourth Legislature as part of Senate Bill 1 overhauling titles 1 and 2 of the Education Code, *see* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws

2207, 2230, to "dissuade school districts from using state funds to pay for costly severance payments when a school board terminates a superintendent's contract." SENATE COMM. ON EDUC., 74TH LEG., AN OVERVIEW OF SENATE BILL 1, THE RATLIFF-SADLER ACT, at 3 (June 1995); *see also* Ellen Williams,[2] *Education*, 49 SMU L. REV. 901, 923 (1996) (Senate Bill 1 attempts to dissuade school board from making costly severance payments when terminating superintendent's contract by requiring reduction in state funds). And, apparently, it was enacted in response to the use of school district funds to "buyout" terminated superintendents' contracts. *See, e.g.,* Melanie Markley, *School Chiefs' Pacts Loaded with Incentives/Reasons for the Clauses: Job's High Turnover Rate,* HOUS. CHRON., JULY 9, 1995, at 29 ("Certainly, districts like Houston have discovered that it is often far less costly to pay superintendents than to terminate them. HISD taxpayers still fume about the $425,000 buyout of Joan Raymond's contract in 1991. . . . High-cost buyouts in fact prompted the Legislature this year to pass a law to discourage them."); Request Letter, *supra,* at 1 (section 11.201(c) was adopted in 1995 "in response to legislative concerns about districts expending substantial sums to buy out superintendents' contracts"). While section 11.201(c) as enacted only reduces the state funds a school district receives by the amount of the severance payment, the introduced version withdrew all state money in the year following the one in which a school district paid a severance payment: "A school district may not agree to pay a superintendent severance pay equivalent to more than 12 months' salary if the district dismisses the superintendent before the end of the contract term. A district that enters into an agreement prohibited by this subsection is ineligible to receive foundation school program funds for the school year following the school year in which the agreement is entered into." Tex. S.B. 1, 74th Leg., R.S. (1995) (as introduced). Given the statutory language of section 11.201(c), the circumstances of its adoption, and its legislative history, we believe the legislature intended to strongly discourage use of school district funds to compensate superintendents for early termination of their contracts by the board of trustees.

Although a broad construction comports with the history and objective of section 11.201(c), we do not believe "severance payment" includes a settlement payment for actual or threatened litigation. A "settlement" is "conclusion of a disputed or unliquidated claim, and attendant differences between the parties, through a contract in which they agree to mutual concessions in order to avoid resolving their controversy through a course of litigation." *Priem v. Shires,* 697 S.W.2d 864, 863 n.3 (Tex. App.–Austin 1985, no writ); *see also McCleary v. Armstrong World Indus., Inc.,* 913 F.2d 257, 259 (5th Cir. 1990) (stating that Texas courts have defined settlement as conclusion of disputed or unliquidated claim through contract to avoid litigation). A settlement payment is an amount paid to resolve an actual or disputed claim the employee may have against the employer. *See Lubart,* 154 F.3d at 541-42; *Gajda,* 158 F.3d at 804-805; *Ball,* 163 F.3d at 309. Accordingly, a payment made to an employee to settle actual or threatened litigation is not simply compensation beyond wages upon early termination of the employment relationship by the employer. It is a payment in lieu of prosecution. *See Lubart,* 154 F.3d at 541-42; *Gajda,* 158 F.3d at 804-805; *Ball,* 163 F.3d at 309.

---

[2]Ms. Williams served as general counsel for Senate Bill 1. *Education,* 49 SMU L. REV. 901 (1996).

Further, including a settlement payment within "severance payment" in section 11.201(c) would discourage amicable resolution of actual or threatened litigation. Texas courts, as a matter of public policy, favor the amicable settlement of controversies because such resolution avoids the uncertainties and often the exorbitant expenditure of time and money associated with litigation. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995); *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992). We presume that the legislature was aware of this public policy and decisions of Texas courts when it enacted section 11.201(c) of the Education Code. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). And if the legislature intended to change this well established policy, it would have done so expressly. Accordingly, we conclude that "severance payment" as used in section 11.201(c) does not include an amount paid to settle actual or threatened litigation.

A payment, however, is not an excludable settlement under section 11.201(c) simply because it is so described or characterized. *Cf. Travelers Ins. Co. v. City of West Columbia*, 482 S.W.2d 53, 55 (Tex. Civ. App.–Houston [1st Dist.] 1972, writ ref'd n.r.e.) ("option agreement" treated as an agreement to compromise and settle where that was its effect). Furthermore, a payment is not a "settlement" simply because it is in consideration for release of "any or all claims" an employee may have against the employer. *See Ball*, 163 F.3d at 309; *Lubart*, 154 F.3d at 542; BLACK'S LAW DICTIONARY 1379 (7th ed. 1999). Whether a compensation payment in a particular case is indeed to resolve an actual or threatened litigation rather than a severance payment depends not only on the language of the agreement but, by definition, on the existence of a bona fide dispute or claim. Although no Texas case appears to have addressed the distinction between a severance payment and a settlement payment in this or a similar context, the federal courts have done so under section 104(a)(2) of the Internal Revenue Code. The federal distinction serves a purpose similar to that under section 11.201(c) of the Education Code, *i.e.*, a "settlement" payment escapes the financial burden imposed on a severance payment, which generally includes any termination payment.

Section 104(a)(2) of the Internal Revenue Code excludes from taxable income "the amount of any damages received . . . on account of personal physical injuries or physical sickness." *See* 26 U.S.C. § 104(a)(2) (1994 & Supp. III 1997). As relevant here, excludable damages can flow either from the "prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." *See* 26 C.F.R. § 1.104-1(c) (1999). Under the case law, a termination payment is treated as a taxable severance payment unless excludable as a settlement under section 104(a)(2). The employer's intent determines the treatment. *Lubart*, 154 F.3d at 541. (It is usually the employee in these cases who asserts that the payment is a settlement payment that should not be included in the employee's taxable income.) The employer's intent, however, is a question of fact. *Id.*

To determine whether the employer intended the compensation as a settlement payment, the federal courts have looked at both the agreement pursuant to which the compensation is paid and the existence of a bona fide claim. *See, e.g., Lubart*, 154 F.3d at 541-42; *Gajda*, 158 F.3d at 804-05; *Ball*, 163 F.3d at 308- 309; *Taggi v. United States*, 35 F.3d 93 (2d Cir. 1994). For instance, in *Ball*, the Fifth Circuit Court of Appeals determined that a lump sum employee termination payment was

a severance payment notwithstanding the employee's claims that a portion of it was for settlement of tort-like claims. *See Ball*, 163 F.3d at 309. The court grounded its holding in the following facts: (1) At the time of the firing and execution of the separation and release agreement at issue, the employee had no asserted or unasserted claims against her former employer; and (2) the laundry list of federal, state, and local claims that were released did not convert the release agreement into a settlement of actual claims. *Id*. The court explained that section 104(a)(2) of the Internal Revenue Code requires a justiciable claim and an express settlement and disposition of such claims. Broad and generic releases as those executed by the employee in connection with her termination when no claims exist do not fall within the section 104(a)(2) definition of settlement. *Id*.

Similarly, in *Lubart*, the Fifth Circuit Court of Appeals upheld the tax court's determination that a lump sum payment in return for the employee's voluntary resignation and release of all potential claims against the employer was a severance payment rather than compensation for personal injury claims. *See Lubart*, 154 F.3d at 541-42. That a portion of the payment was expressly conditioned on the release of "any and all" claims against the employer did not make the payment a settlement of potential or future claims. *Id*. The court relied on the Second Circuit Court of Appeal's reasoning in *Taggi*, 35 F.3d 93, that exclusions from income are to be narrowly construed and that parties must be prohibited from creating contrived "settlement agreements" to avoid taxation. *Lubart*, 154 F.3d at 542. To prevent such contrived settlements, the courts must require the presence of an actual or bona fide dispute. *Id*. Otherwise, if section 104(a)(2) of the Internal Revenue Code were construed to encompass releases of potential unspecified future claims, manufacturing favorable tax treatment would be simple. *Id*.

We believe *Ball*'s and *Lubart*'s rationale underlying the requirement for a bona fide claim applies with equal force in determining whether a payment is a settlement payment excluded from "severance payment" under section 11.201(c) of the Education Code because it effectuates section 11.201(c)'s legislative purpose: discouraging use of school district funds to compensate superintendents for early termination of their contract. *See Mitchell*, 943 S.W.2d at 438 (primary objective in statutory construction is to give effect to legislature's intent). To effectuate that purpose, exclusions from "severance payment" must be narrowly construed, and school districts prohibited from creating contrived "settlement agreements" to avoid the financial accounting for costly payments to terminated superintendents. To prevent such contrived settlements, it is not only logical but necessary that compensations paid to superintendents involve bona fide claims or disputes. Otherwise any amounts paid and described as a settlement of potential future claims would fall outside the ambit of section 11.201(c), rendering it a useless measure. *See id*. (when construing statute, court may consider statute's objective and the consequences of particular construction); TEX. GOV'T CODE ANN. § 311.023(1), (5) (Vernon 1998) (same). We presume that the legislature did not intend to adopt a useless act. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex. 1998).

We do not believe that the distinction between a section 11.201(c) severance payment and a settlement payment is that there is consideration given for a settlement payment, but not for a severance payment. In other words, we do not believe a termination payment is a section 11.201(c)

severance payment only if it is gratuitous as argued by various briefs submitted to this office.[3] Nothing in the ordinary definition of "severance payment" limits it to a gratuitous payment and, in fact, it is often made in exchange for release of any claim that the employee may have against the employer. And, presumably, school districts do not hand out large sums of public money gratuitously to terminated superintendents. Additionally, there was and is no need by statute to *limit or penalize* gratuitous termination payments. *See id.* at 485 (presume that legislature does not intend to adopt useless acts). Gratuitous payments generally are *already proscribed* by article III, section 53 of the Texas Constitution prohibiting a school district from granting extra compensation to an employee after services have been rendered or a contract entered into and performed in whole or in part. *See* TEX. CONST. art. III, § 53. Moreover, the history and objective of section 11.201(c) make it clear that the statute was intended to reach situations in which there was consideration, namely, superintendent contract "buyouts": payments to superintendents to leave employment notwithstanding the term of their contracts. *See* Tex. Att'y Gen. Op. No. JC-0165 (2000) at 4 (where payee offers consideration for additional payment, there is no violation of article III, § 53). Agreements to leave employment, waive claims, or similar agreements are consideration for additional payments. *Id.*

Thus, in answer to your first question, we conclude that a payment in settlement of actual or threatened litigation is not a severance payment under section 11.201(c). A payment to a terminated superintendent described as a settlement of actual or threatened litigation is a severance payment under section 11.201(c) if there is no actual or bona fide claim. Whether a payment in any particular case is a severance payment rather than a settlement payment will depend on the terms of the related contract and factual matters surrounding it, such as the existence of an actual or bona fide claim. Normally, this office neither construes contracts nor investigates and determines facts in the opinion process. *See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0165 (2000) at 1, JC-0133 (1999) at 5.

You next ask: "If your answer to question number 1 is 'yes', is the term 'severance payment' limited to amounts due under an existing contract or are all amounts paid to a departing superintendent properly considered 'severance payments'?" Additionally, you ask: "Is payment of insurance premiums or other benefits by the district after the termination of an employment contract with the district within the meaning of 'severance payment'?" Request Letter, *supra,* at 2.

We have previously determined that the ordinary meaning of severance payment is broad and that this is the meaning to be ascribed to "severance payment" as used in section 11.201(c) of the Education Code: compensation paid by an employer to an employee beyond his or her wages upon an early termination. *See id.* at 3. This broad definition comports with the legislative intent to

---

[3]Letter Brief from Lynn Rossi Scott, Attorney at Law, Bracewell & Patterson L.L.P., to Honorable John Cornyn, Texas Attorney General, at 4-5 (Dec. 17, 1999); Letter Brief from Neal W. Adams, Attorney at Law, Adams, Lynch & Loftin, P.C., on behalf of Texas Association of School Administrators, to Elizabeth Robinson, Chair, Opinion Committee, at 3 (Feb. 4, 2000); Letter Brief from Jenifer C. Severinson, Attorney at Law, Texas Association of School Boards, to Honorable John Cornyn, Texas Attorney General, at 1-2 (Dec. 20, 1999); Letter Brief from Kelli H. Karczewski, Attorney at Law, Schwartz & Eichelbaum, P.C., to Honorable John Cornyn, Texas Attorney General, at 5 (Jan. 7, 2000). (All briefs on file with Opinion Committee.)

discourage school districts from using public funds to compensate superintendents for early termination of their contracts. *See id.* at 4. In keeping with this legislative intent, it is immaterial what the payment is for or how it is denominated if school district funds are used to make the payment after the employment relationship has been severed. Thus, any payment to a superintendent beyond his or her wages upon early termination constitutes a section 11.201(c) severance payment unless legally excluded. We are unaware of any authority that limits the section 11.201(c) severance payments "to amounts due under an existing contract" or excludes payments for insurance premiums or other benefits. Accordingly, we do not believe severance payments are limited to amounts due under the terminated employment contract and exclude insurance premiums or other benefit payments made after the termination as a matter of law.

We cannot, however, determine as a matter of law that *all* (unspecified) amounts paid on termination may properly be considered severance payment. Amounts paid on termination, for example, may include a severance as well as a settlement component. They may also include payments for accrued sick or vacation pay. *See, e.g., Shea v. Wells Fargo Armored Serv. Corp.*, 810 F.2d 372, 376 (2d Cir. 1987) (accumulated vacation pay upon termination did not constitute "severance pay" entitled to protection under Employee Retirement Income Security Act [ERISA] because not contingent on termination or severance); *Agsalud v. Blalack*, 699 P.2d 17, 19 (Hawaii 1985) ("severance payments," which by definition are payments made on severance of employment relationship, are not remunerations similar to vacation, sickness, or holiday pay, which are remuneration within employment context).

Finally, you ask: "Are 'consulting agreements' with former superintendents within the meaning of 'severance payment,' particularly when duties are either unspecified or consist of providing transitional services during a period covered by the original employment contract?" Request Letter, *supra*, at 2. We understand you to ask whether payments upon early termination for consulting services are severance payments under certain circumstances. We conclude that payments for contrived consulting services are severance payments under section 11.201(c) of the Education Code.

Payments pursuant to a new employment contract are not severance payments. While the meaning of severance payment is broad, by definition it does not include payments for continuing employment or additional services, *i.e.*, wages. Having said that, it is possible to imagine contrived "consulting services." Thus, payments to superintendents upon termination for services that are neither expected nor rendered would be severance payments under section 11.201(c). *See, e.g., Nail v. Brazoria County Drainage Dist. No. 4*, 992 F. Supp. 921, 923 (S.D. Tex. 1998) ("[A]ll parties involved understood that Nail's [District's general manager] acceptance of the 'consulting' position was a voluntary resignation, and that Nail would not actually be required to provide any consulting services to the District."). In this situation, the only consideration for the additional payment is the superintendent's agreement to the termination and, most likely, release of any claim the superintendent may have against the school district. Whether a particular payment is indeed for contrived consulting services and thus a section 11.201(c) severance payment is a factual

determination based on a review of the surrounding circumstances and is beyond the scope of the opinion process.

We do not believe, however, that consulting service payments are severance payments solely because the consulting duties are unspecified or for transitional services for a period covered by the original employment contract. Consulting services may be expected and provided notwithstanding that they are unspecified or unclear. It may be that the services will be provided as needed. Similarly, transitional services by the outgoing superintendent may be necessary and provided to facilitate the transition from one superintendent to another. That the period of the transitional services is covered by the original employment contract would not in itself negate the validity or necessity for those services.

## S U M M A R Y

Under section 11.201(c) of the Education Code, "severance payment" is compensation paid to a superintendent beyond his or her wages upon early termination of the employment relationship by a school district. A payment, however, in settlement of actual or threatened litigation is not a severance payment under section 11.201(c). A payment to a terminated superintendent described as a settlement of actual or threatened litigation is a section 11.201(c) severance payment if there is no actual or bona fide claim. Section 11.201(c) severance payments are not limited to amounts due under the terminated employment contract and do not exclude insurance premiums or benefit payments made after the termination as a matter of law. Payments for contrived consulting services are section 11.201(c) severance payments. Whether amounts paid in any particular case are severance payments will depend on the termination agreement and the surrounding factual circumstances.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee